IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

VICTOR HUGO MANGANDID BARRILLAS,   )
       )
     Petitioner,     )
       )
    v.      )
       )   1:26-cv-00194 (AJT/LRV)
DONALD J. TRUMP, *et al.*,     )
       )
     Respondents.     )

## ORDER

Before the Court is Victor Hugo Mangandid Barrillas ("Petitioner") Petition for Writ of Habeas Corpus, [Doc. No. 1] (the "Petition"), seeking release from Immigration and Customs Enforcement ("ICE") custody on the grounds that his ongoing detention pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1231 violates his fifth amendment substantive due process rights based on *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), as well as under the *Accardi* doctrine.[1] Upon consideration of the Petition, the memoranda in support thereof and in opposition thereto [Doc. Nos. 7, 8], and the record in its entirety, and for the reasons stated herein, the Petition is **GRANTED**.

### I.    BACKGROUND

Petitioner is a native and citizen of Guatemala. [Petition] ¶ 1. He alleges to have entered and re-entered the United States various times: he first entered without inspection via the southern border in 2001; departed on his own in 2004 and then re-entered without inspection in 2005. *Id.*

---

[1] Count IV of the Petition also asks the Court to enjoin Respondents from transferring the petitioner outside this district, which the Court did in its Order dated January 22, 2026. [Doc. No. 4].

1

¶¶ 2-5. He was then removed pursuant to a final order of removal in 2011, and re-entered (again without inspection) that same year; he has remained in the U.S. since. *Id*. ¶¶ 6-8. In May 2019, Petitioner submitted a form I-918 Petition for U Nonimmigrant Status ("U Visa") pursuant to 8 U.S.C. § 1101(a)(15)(U), and on March 22, 2024, USCIS sent him a notice that it had made a bona fide determination of his eligibility for such a visa. *Id*. ¶¶ 51-52; [Doc. No. 10]. As authorized by this bona fide determination, Petitioner then filed a form I-765 Application for Employment Authorization, which was granted on February 5, 2025, thereby initiating his deferred action status. *Id*.; [Doc. No. 11]. On December 30, 2025, ICE arrested Petitioner and transferred him to the Farmville Detention Center, where he remains. *Id*. ¶¶ 10, 18. ICE reinstated Petitioner's prior removal order pursuant to 8 U.S.C. § 1231(a)(5), which provides that immigrants who re-enter illegally after having been removed are subject to detention without bond eligibility. *Id*.; [Opp.] at 5; [Doc. No. 7-2].

## II.    LEGAL STANDARD

"A federal court may grant habeas relief only on the ground that the petitioner is in custody in violation of the Constitution or laws or treaties of the United States.'" *Torrence v. Lewis*, 60 F.4th 209, 213 (4th Cir. 2023) (internal citations omitted). After receiving the petition and any response thereto, "[t]he court shall summarily hear and determine the facts and dispose of the matter as law and justice require." 28 U.S.C. § 2243. "[T]he heart of habeas corpus," the Supreme Court has noted, is to allow a detainee to "challeng[e] the fact or duration of his physical confinement," and to "seek[] immediate release or a speedier release from that confinement." *Preiswer v. Rodriguez*, 411 U.S. 475, 498 (1973).

8 U.S.C. §1231(a) requires the government to detain noncitizens during the "removal period," which is defined as the 90-day period during which "the Attorney General shall remove

the alien from the United States." 8 U.S.C. §1231(a)(1)(A). That period commences upon one of three occasions: "(i) The date the order of removal becomes administratively final; (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order; or (iii) if the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." 8 U.S.C. §1231(a)(1)(B). Detention after the end of the removal period is governed by 8 U.S.C. § 1231(a)(6), which states that inadmissible aliens "may be detained beyond the removal period and, if released, shall be subject to [certain] terms of supervision."

### III.    DISCUSSION

Based on his *Accardi* claim, Petitioner argues that in violation of his procedural due process rights, his detention without a pre-deprivation hearing constitutes a deprivation of the property and liberty interests embedded in and conveyed by his U-visa bona fide determination (namely, his work authorization and deferred action). [Petition] ¶¶ 125-47. A U-Visa grants deferral of removal and certain other immigration benefits to certain noncitizens who assist in law enforcement investigations. 8 U.S.C. § 1101(a)(15)(U). The procedures governing U-visa applications are set out at 8 U.S.C. § 1184(p)(1), and the USCIS regulations at 8 C.F.R. § 214.14(c). Under these rules, the process begins with an applicant's submission of a Form I-918 application in conjunction (supported by a law enforcement officer's declaration that the applicant has been of assistance, among other options. 8 U.S.C. § 1184(p)(6); 8 C.F.R. § 214.14(c)(2). USCIS may then either grant or deny the application outright, or may make a determination that the application is bona fide, which determination would entitle the applicant to certain forms of "interim relief" based on the conclusion that they are prima facie eligible for a U-visa. 8 C.F.R. § 214.14(a)(13). This includes, *inter alia*, the right to apply for and receive

employment authorization and deferred action via a form I-765 (by contrast, if the U-visa is granted outright, employment authorization issues automatically; see 8 C.F.R. § 214.14(c)(7)). Interim relief is commonly granted to applicants whose form I-918 is submitted after the yearly cap on U-visa issuances has been reached. *See* 8 C.F.R. § 214.14(d).

Here, the record is clear that USCIS has issued a bona fide determination on Petitioner's application and approved Petitioner's form I-765, thereby granting him work authorization and deferred action [Doc. Nos. 10, 11], but has not taken the ultimate step of issuing him a U-Visa. The parties' dispute is solely whether Petitioner, at his current intermediate step in the U-visa process, has been granted a property and/or liberty interest, the deprivation of which would violate due process. Petitioner contends that Respondents' arrest and detention of him without an opportunity for a hearing violates his procedural due process rights given his earlier grant of deferred action and work authorization. *See* [Petition] at 13 (*citing Goldberg v. Kelly*, 397 U.S. 254, 264 (1970)).

Petitioner's bona fide determination stated that "your period of deferred action will begin on the date your employment authorization begins" [Doc. No. 10], which authorization began on February 5, 2025 and is set to continue to February 4, 2029. [Doc. No. 11]. In that regard, the Supreme Court has interpreted deferred action as meaning that "no action will thereafter be taken to proceed against an apparently deportable alien, even on grounds normally regarded as aggravated." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 484 (1999) (cleaned up)). As a result, these actions conferred upon the Petitioner property and liberty interests;

namely, the right to earn a living with immigration enforcement being deferred, including detention.

Here, based on Petitioner's 2011 removal order, Respondents have rescinded both of these interests by detaining Petitioner pending his removal without any pre- or post-deprivation process, based on their interpretation of 8 U.S.C. § 1231(a)(5)'s statement that a reinstated order of removal "is not subject to being reopened or reviewed, the alien is not eligible and may not apply for any relief under this chapter, and the alien shall be removed under the prior order at any time after the reentry."

Pointing to the disclaimers in Petitioner's bona fide notice and to the U-visa regulations (*see* 8 C.F.R. § 214.14(c)), Respondents claim that Petitioner's benefits are discretionary and can be rescinded without violating his due process rights; however, this Court has previously rejected this reading of deferred action. *See Sarmiento v. Perry*, No. 1:25-CV-01644-AJT-WBP, 2026 WL 131917, at *7 (E.D. Va. Jan. 19, 2026) ("deferred action, although a discretionary action, is not simply a non-enforcement policy, but instead an affirmative determination by the government that certain individuals that meet enumerated criteria are entitled to forbearance from removal and work authorization") (cleaned up). Furthermore, several district courts, including this one, have recently considered habeas petitions asserting that the petitioners' detention (which would otherwise have been authorized by the INA) violates due process because of the petitioner's deferred action status–and have held that it does. *Sarmiento*, 2026 WL 131917; *see also F.R.P. v. Wamsley*, No. 3:25-CV-01917-AN, 2025 WL 3037858, at *6 (D. Or. Oct. 30, 2025). While some of these cases have dealt with deferred action under other provisions of the INA such as Special Immigrant Juvenile Status (SIJS) (see *id.*), at least one deals with functionally-identical facts; namely deferred action for U- visa applicants with bona fide

determinations. *See, Nevarez Jurado v. Freden,* No. 25-CV-943-LJV, 2025 WL 3687264, at *11 (W.D.N.Y. Dec. 19, 2025). In doing so, those Courts have rejected Respondents' arguments, similar to those made here pursuant to 8 C.F.R. § 214.14(c), that a "grant of deferred action ... does not preclude DHS from commencing removal proceedings at any time." *F.R.P.*, 2025 WL 3037858, at *6.

For the above reasons, the Court concludes that Respondents' arrest and detention of Petitioner violated his procedural due process rights, and he has prevailed on his *Accardi* claim. Accordingly, the Court proceeds to the issue of remedy: for *Accardi* claims generally, relief is the vacatur of the challenged agency action. *See Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008). As the challenged action here is the arrest and detention of the Petitioner, the corresponding appropriate relief is also to order Petitioner's release, as multiple courts have done on analogous facts. *See, e.g. Santamaria Orellana v. Baker*, No. CV 25-1788-TDC, 2025 WL 2444087, at *8 (D. Md. Aug. 25, 2025) (granting habeas petition for improper revocation of order of supervision); *see also McSweeney v. Warden of Otay Mesa Det. Facility*, No. 3:25-CV-02488-RBM-DEB, 2025 WL 2998376, at *7 (S.D. Cal. Oct. 24, 2025) ("The Court's research indicates that every district court, except two, to consider the issue has determined that where ICE fails to follow its own regulations in revoking release, the detention is unlawful and the petitioner's release must be ordered") (internal quotations omitted).

## IV.   CONCLUSION

For the above reasons, the Petition is granted, and it is hereby

6

**ORDERED** that ICE shall release Petitioner from detention immediately;[2] and it is further

**ORDERED** that Respondents are **ENJOINED** from re-detaining the Petitioner from re-detaining the Petitioner without providing, either before or contemporaneous to his re-detention, a hearing before an Immigration Judge at which Respondents shall justify his re-detention based on a change in circumstances related to his deferred action status, or a change in circumstances raising a significant likelihood of his removal in the reasonably foreseeable future, including what efforts have been made to locate a country for removal, the name of the country to which Petitioner will be removed and the authorizations received from that country for that removal.

The Clerk is directed to send copies of this Order to all counsel of record.

Alexandria, Virginia
March 25, 2026

/s/
Anthony J. Trenga
Senior United States District Judge

---

[2] Because Petitioner's *Accardi* claim is successful and requires his immediate release, the Court need not address his first and third causes of action which argue in substance that he is entitled to release under *Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).